IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| MICHELLE Y. ARMSTEAD,<br>　　　　Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 3:23CV711 (RCY) |
| ANTHEM/ELEVANCE HEALTH HR,<br>　　　　Defendant. | )<br>)<br>)<br>) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant Elevance Health, Inc.'s[1] Motion to Dismiss Complaint ("Motion to Dismiss," ECF No. 8). Defendant has moved the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court will grant Defendant's motion in part and deny it in part.

## I. FACTUAL ALLEGATIONS

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Applying this standard, the Court construes the facts in the Complaint as follows.

Plaintiff Michelle Y. Armstead was hired by Defendant Elevance Health Inc. on October

---

[1] In its briefing, Defendant notes that it was formerly known as "Anthem, Inc.," but that it "does not do business as 'Anthem/Elevance Health HR,'" and "objects to how it is named in the case caption." Mem. Supp. Mot. Dismiss 1, ECF No. 9. The Court therefore adopts Defendant's preferred nomenclature throughout this Opinion.

28, 2013, as a Claims Processor.  Mem. Supp. Mot. Dismiss Ex. A ("EEOC Charge") 1,[2] ECF No. 9-1.[3]  Plaintiff's Complaint and EEOC charge indicate that she has been diagnosed with depression and anxiety.  Compl. ¶ III.D.  Plaintiff worked for Defendant for several years before taking "leave," presumably for reasons related to her diagnoses.  EEOC Charge 1; Compl. ¶¶ III.A, III.D, III.E.  Plaintiff's leave concluded in December 2021.  EEOC Charge 1.  Upon returning to work, Plaintiff was granted a "split shift" accommodation.  *Id.*  Defendant also granted Plaintiff an accommodation of permanent work-from-home status.  Mem. Supp. Mot. Dismiss Ex. B ("Approval Notice") 1, ECF No. 9-2.[4]

---

[2] For this and all other filings cited by page number, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

[3] Plaintiff did not attach her EEOC charge to her Complaint.  *See generally* Compl.  Defendant, on the other hand, *did* attach Plaintiff's EEOC charge to its Memorandum in Support of its Motion to Dismiss.  *See* EEOC Charge 1–4.  At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and are authentic, and matters of public record subject to judicial notice.  *Philips*, 572 F.3d at 180 (4th Cir. 2009) (first citing Fed. R. Civ. P. 10(c); and then citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).  Several courts in this circuit have found it appropriate to consider an EEOC charge at the motion to dismiss stage, without converting the motion to one for summary judgment, either determining that it is a document of which a court may take judicial notice, *see Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 538 n.3 (E.D.N.C. 2008), or because the document is deemed integral to the complaint and unchallenged, *e.g.*, *Smith v. Dupont Specialty Prods. USA*, 2023 WL 7703470, at *3 n.4 (E.D. Va. Nov. 15, 2023) ("The Court may examine the plaintiff's . . . EEOC charge, attached to the . . . defendant's memorandum in support of its motion to dismiss . . . because [it is] integral to and explicitly relied on in the Amended Complaint."); *Brown v. Inst. for Fam. Centered Servs.*, 394 F. Supp. 2d 724, 728 n.2 (M.D.N.C. 2005) (determining EEOC charge to be integral to the complaint inasmuch as "Plaintiff must rely on it to establish [he] has exhausted [his] administrative remedies").  Since Plaintiff has not challenged the authenticity of the attached EEOC charge, the Court is satisfied that either rationale supports its consideration of the underlying EEOC charge at this stage.

[4] Exhibit B is a February 17, 2023, letter entitled "Notice of Approved Accommodation Request" ("Approval Notice"), which outlines the accommodations requested by Plaintiff and those ultimately provided by Defendant; Plaintiff generally referenced such accommodations in her Complaint when articulating the factual basis for her claims.  *See* Compl ¶ III.E ("I was terminated from my job while under FMLA and ADA accomodations [sic].  Once minimum ADA accomodations [sic] were made resistently [sic] by my manager Monica Worley, I was retaliated against and fired.").  Because Plaintiff alleges, *inter alia*, that Defendant is liable on a failure to accommodate theory, *see id.* ¶ III.A, the Court deems the Approval Notice integral to Plaintiff's Complaint.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (noting that a document is "integral" and may be considered at the 12(b)(6) stage where the plaintiff's claims turn, or are otherwise based on, the contents of the document); *see also Townes v. Md. Dep't of Juvenile Servs.*, 2015 WL 5928114, *3 (D. Md. Oct. 8, 2015) (failure to accommodate case wherein the court considered Defendant's attached denial-of-accommodation letter at the 12(b)(6) motion to dismiss stage).  Based on the integral nature of this document and because Plaintiff has not contested its authenticity, the Court finds it appropriate to consider the Approval Notice in deciding the instant Motion to Dismiss.  *See Goines*, 822 F.3d at 166 (a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity").

On December 29, 2022, Plaintiff submitted a request for further accommodations.  *See id.*  In the "last week of February 2023," Plaintiff met with her manager, Monica Worley, and her accommodation case worker to discuss the request.  *Id.*; Compl. ¶ III.E.  At that meeting, Ms. Worley partially granted and partially denied Plaintiff's request.  *Id.*  In a letter dated February 17, 2023, Defendant memorialized the complete list of Plaintiff's accommodations: continued split shifts and remote work, with added fifteen-minute breaks and flexible scheduling.  Approval Notice 1.

On March 7, 2023, Defendant terminated Plaintiff's employment.  *See* EEOC Charge 1; Compl. ¶ III.E.  Defendant's "Manager Senior Financial Operator" informed Plaintiff she had been fired because she "was not meeting productivity and . . . was not consistent."  EEOC Charge 1.

## II.  RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed a Charge of Discrimination with the Virginia Office of Civil Rights ("Virginia OCR") and the federal Equal Employment Opportunity Commission ("EEOC") on August 3, 2023.  Compl. ¶ IV.A; EEOC Charge 1.  Therein, Plaintiff contended that Defendant's actions constituted disability discrimination in violation of the Americans with Disabilities Act ("ADA").  EEOC Charge 2.  The EEOC issued a Notice of Right to Sue letter, which Plaintiff received on August 12, 2023.  Compl. ¶ IV.B.

Plaintiff filed this Complaint on November 21, 2023, alleging discrimination in violation of both the ADA and Title VII of the Civil Rights Act of 1964 ("Title VII").  *See id.*  Defendant filed the instant Motion to Dismiss and Memorandum in Support thereof on January 11, 2024.  ECF Nos. 8, 9.  Plaintiff declined to file a response, and her time for doing so has since passed.  Defendant's Motion to Dismiss is thus ripe for review.

### III.   STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).   A Rule 12(b)(6) motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1356 (4th ed. 2024).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).  *Id.* (citations omitted).  The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor.  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

However, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*,

550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

Also, a *pro se* complaint is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).  "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023).

## IV.  DISCUSSION

Plaintiff's Complaint makes four separate claims: (1) an ADA failure to accommodate claim, (2) an ADA wrongful termination claim, (3) an ADA retaliation claim, and (4) a Title VII disability discrimination claim.  *See* Compl. ¶¶ II, III.A.  Defendant has moved to dismiss all four of these claims.  *See* Mem. Supp. Mot. Dismiss ("Mem Supp.") 1–3, 8–21, ECF No. 9.

As a threshold matter, Defendant argues that Plaintiff has failed to plead sufficient facts to establish she was a qualified individual with a disability at the time of the underlying events.  *See id.* at 8–9.  Her failure to make such a showing, per Defendant, dooms her ADA failure to accommodate and wrongful termination claims.  *See id.*  Second, Defendant argues that Plaintiff has pleaded insufficient facts to plausibly state *any* of her ADA claims.  *See id.* at 9–18.  Finally,

Defendant argues that Plaintiff's Title VII claim must be dismissed since Plaintiff did not raise it before the EEOC.  *See id.* at 18–21.

For the reasons stated below, the Court largely agrees with Defendant and will therefore dismiss most of Plaintiff's claims.  Plaintiff's retaliation claim, however, is adequately alleged and will survive.

**A.  ADA Claims**

As noted, Plaintiff brings three discrete ADA claims: failure to accommodate, wrongful termination, and retaliation.  Each is considered in turn below.

1.  Failure to Accommodate

To establish a *prima facie* case of failure to accommodate under the ADA, Plaintiff must allege that:  (1) she "had a disability within the meaning of the [ADA]," (2) the employer "had notice of [the plaintiff's] disability," (3) with "reasonable accommodation[s]," Plaintiff could "perform the essential functions of the position," and (4) the employer "refused to make such accommodations."  *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2011)).

a.  *Plaintiff's Disability Under the ADA*

Defendant argues that Plaintiff has failed to adequately allege she was a qualified individual with a disability under the ADA, fatally undermining her failure to accommodate claim.  *See* Mem. Supp. 8–9.  Specifically, Defendant contends that Plaintiff's alleged depression and anxiety diagnoses cannot alone establish an ADA disability because she does not demonstrate how these diagnoses "substantially limit[] one of her major life activities."  Mem. Supp. 9.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment;

or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1); *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).  Congress, by way of the Americans with Disabilities Amendments Act ("ADAA"), has instructed courts to construe the term "disability" broadly, "to the maximum extent permitted by [the ADAA's] terms."  42 U.S.C. § 12102(4)(A); *Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 329 (4th Cir. 2014); *Jones*, 16 F. Supp. 3d at 631–32.  To further advance this "liberalized purpose," Congress has also instructed courts to interpret the term "substantially limits" broadly.  42 U.S.C. § 12102(4)(B); *Summers*, 740 F.3d at 329; *Jones*, 16 F. Supp. 3d at 632.

The Court is skeptical of Defendant's argument that Plaintiff has not sufficiently established a disability within the meaning of the ADA.  First, as noted, Plaintiff alleges that she has depression and anxiety diagnoses.  Compl. ¶ III.D.  Such diagnoses meet the EEOC definition of "mental" impairments.  29 C.F.R. § 1630.2(h)(1); *Jones*, 16 F. Supp. 3d at 632.  The next question is whether these conditions "substantially limit" Plaintiff's major life activities.  *See Jones*, 16 F. Supp. 3d at 632.  In relevant part, Plaintiff's EEOC charge reveals that she "returned to work" for Defendant "after being on leave," at which point she was given a workplace accommodation.  EEOC Charge 1.  Given the context of Plaintiff's claim, it is reasonable to infer that her leave and accommodations were both related to and/or precipitated by her depression and anxiety.  *See id.*; Compl. ¶¶ III.A, III.D, III.E.  Accepted as true, such an allegation indicates that Plaintiff's conditions substantially limit her major life activities.  *See, e.g.*, *Mack v. CGI Fed., Inc.*, 2017 WL 11317473, at *4 (E.D. Va. May 30, 2017) (suggesting that a period of leave necessitated by the plaintiff's anxiety disorder may support a finding that the plaintiff's anxiety substantially limits one or more major life activities).  Given the Congressional admonition to "broadly construe" the term "substantially limits," *Jones*, 16 F. Supp. 3d at 632 (quoting 29 C.F.R.

§ 1630.2(j)(1)(iii)) and the "less stringent standards" imposed on *pro se* litigants, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court declines to definitively determine whether Plaintiff has failed to sufficiently allege a disability under the ADA. Instead, the Court will assume *arguendo* that Plaintiff has sufficiently pleaded that she is disabled within the meaning of the ADA and turn to consider Defendant's remaining arguments for dismissal.

### b. The Sufficiency of Defendant's Accommodations

Defendant next argues that Plaintiff (1) has failed to identify "a reasonable accommodation that would have permitted her to satisfy the essential functions of her job," Mem. Supp. at 9–10, and (2) that Defendant *did* provide certain accommodations for Plaintiff's alleged disability. *See id.* at 10–11. According to Defendant, either of these deficiencies provides an independent basis for the dismissal of Plaintiff's failure to accommodate claim. *See id.* at 9–11.

Upon receiving notice of an employee's "disability and desire for an accommodation," the ADA imposes a duty upon employers to engage with the employee to identify and implement a "reasonable accommodation." *Jacobs v. N.C. Admin. Off. Cts.*, 780 F.3d 562, 579 (4th Cir. 2015). A reasonable accommodation is one that enables the employee to perform the "essential functions" of her job. 29 C.F.R. § 1630.2(o)(1)(ii). Importantly, the employer need only provide an accommodation that meets this reasonableness standard: it need not "provid[e] the exact accommodation that the employee requested." *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 167 (4th Cir. 2024) (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015)). When an employee could be reasonably accommodated through multiple measures, "the employer, exercising sound judgment, possesses the ultimate discretion over these alternatives." *Id.* (quoting *Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1011 (4th Cir. 2020)). To successfully demonstrate that an employer has violated the ADA by failing to

accommodate a qualifying disability, the plaintiff bears the burden "of identifying a reasonable accommodation that would have permitted her to satisfy the essential functions of her job." *Collins v. Verdanero Grp.*, 2019 WL 2718495, at *6 (E.D. Va. June 28, 2019) (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464–65 (4th Cir. 2012)).

Plaintiff's Complaint admits that Defendant provided her with accommodations. Compl. ¶ III.E. Nevertheless, under the above framework, Plaintiff's claim could succeed if she demonstrated that her provided accommodations did not empower her to satisfy the "essential functions" of her position, 29 C.F.R. § 1630.2(o)(1)(ii), and if she identified alternative, reasonable accommodations that would accomplish such a goal. *See Collins*, 2019 WL 2718495, at *6. Plaintiff, however, has done neither.

First, Plaintiff does not even allege that her existing accommodations were insufficient. In fact, she appears to admit that the provided accommodations satisfied the ADA, albeit "minim[ally]." Compl. ¶ III.E. Further, Plaintiff does not identify what more Defendant could provide that would assist her in accomplishing those "essential functions" of her position. Therefore, Plaintiff has failed to sufficiently allege the existence of an additional reasonable accommodation and has failed to sufficiently allege that Defendant "refused to make such accommodations." *Wilson*, 717 F.3d at 345. Because both are required to support a claim for failure to accommodate, the Court finds that Plaintiff has not plausibly stated her failure to accommodate claim. This claim will be dismissed.

2. <u>Wrongful Termination</u>

Plaintiff next claims that Defendants wrongfully terminated her employment in violation of the ADA. To adequately allege such a violation, a plaintiff must establish the following: (1) she was a "qualified individual with a disability;" (2) she was discharged; (3) at the time of her

9

discharge; she "was performing [her] job at a level that met [her] employer's legitimate expectations;" and (4) her discharge "occurred under circumstances that raise a reasonable inference of wrongful discrimination." *Jones*, 16 F. Supp. 3d at 633 (quoting *Reynolds*, 701 F.3d at 150); *see Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004).

With respect to this claim, the Defendant argues that (1) Plaintiff does not allege a qualifying ADA disability, (2) Plaintiff fails to establish that, at the time of her discharge, she was performing her job in conformance with Defendant's legitimate expectations, and (3) Plaintiff does not allege any facts which give rise to a reasonable inference of wrongful discrimination.  As to Defendant's first argument, the Court incorporates the determination *infra* that Plaintiff has likely sufficiently alleged a qualifying disability and again assumes the satisfaction of the first element of the claim.  Defendant's second and third arguments, however, are correct.

As noted, a successful wrongful termination claim must establish that the plaintiff was terminated despite adequate performance.  *Jones*, 16 F. Supp. 3d at 633.  Plaintiff's Complaint does not make allegations about her job performance, adequate or otherwise.  In fact, the only statements regarding job performance presently available for consideration are those from her "Manager Senior Financial Operator," which indicate inadequate work quality.  EEOC Charge 1 (stating that, upon termination, the "Manager Senior Financial Operator" informed Plaintiff that she was "not meeting productivity and was . . . inconsistent").  These statements and Plaintiff's failure to contest them foreclose any reasonable inference that Plaintiff was terminated despite adequate performance.  *Jones*, 16 F. Supp. 3d at 633.

A successful claim also requires the plaintiff to allege a discriminatory nexus between her disability and her termination: that she was terminated *because of* her qualifying disability. *Dimaano v. Va. Ctr. for Behav. Rehab.*, 2024 WL 3823795, at *9 (E.D. Va. Aug. 13, 2024)

(dismissing wrongful termination claim because the plaintiff did not "plausibly allege that his disability was a 'but-for' cause of his discharge").  Aside from listing wrongful termination as a claim for relief, Compl. ¶ III.A, and asserting that she was "wrongfully terminated," *id.* at ¶ V, Plaintiff wholly fails to allege that she was terminated for discriminatory reasons.  Further, Plaintiff gives the Court no reason to question the non-discriminatory reasoning provided by Defendant at the time of her termination.  EEOC Charge 1.  Inferring discrimination upon these allegations—or lack thereof—would require too much speculation.  *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) (holding that a plaintiff failed to sufficiently plead wrongful termination when an inference of discrimination would require the court to "speculate" and "disregard the reason given to [the plaintiff] for his termination").  Therefore, the Court will also dismiss this claim.

    3.  <u>Retaliation</u>

Plaintiff next argues that her termination by Defendant amounted to unlawful retaliation under the ADA.  Compl. ¶¶ III.A, III.E.  To plausibly state such a claim, a plaintiff must plead sufficient facts to establish that (1) she engaged in protected conduct, (2) suffered an adverse action, and (3) a "causal link exists between the protected conduct and the adverse action."  *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002); *see Jones*, 16 F. Supp. 3d at 635.

Defendant chiefly argues that Plaintiff has failed to establish a "causal link" between any protected conduct and her termination, and therefore has failed to adequately allege that she experienced unlawful retaliation.  Mem. Supp. at 16–18.  Even though Plaintiff has not alleged facts establishing retaliatory animus, a causal link may be nevertheless inferred from "very close" temporal proximity.  *Ali v. BC Architects Eng'rs, PLC*, 832 Fed. App'x 167, 173 (4th Cir. 2020) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  While the Fourth Circuit

has not established exactly what might constitute "very close" in time, the lapsing of months generally "weaken[s] . . . the inference of causation between the two events." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003); *accord Perry v. Kappos*, 489 Fed. App'x 637, 643 (4th Cir. 2012). Conversely, when a plaintiff alleged that less than a month lapsed between protected conduct and adverse action, she was found to have sufficiently established the necessary causal link. *See Jacobs*, 780 F.3d at 579 ("[T]hree weeks . . . is sufficient to establish a disputed issue of fact as to the causation element of the prima facie case."); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) (holding that an eleven-day lapse between an accommodation request and termination established causation).

In assessing Defendant's argument, it is helpful to first identify the relevant protected conduct and adverse action. First, a plaintiff engages in "protected conduct" whenever she opposes "any act or practice made unlawful by [the ADA]" or "participate[s] in any manner" in "[an ADA] investigation, proceeding, or hearing." 42 U.S.C. § 12203(a). The Fourth Circuit has previously held that accommodation requests constitute protected conduct. *Haulbrook*, 252 F.3d at 706. Because the ADA requires employers to engage in an "interactive process" with employees requesting accommodations, 29 C.F.R. § 1630.2(o)(3), engagement in that process would likewise constitute protected conduct. *See* 42 U.S.C. § 12203(a). Therefore, both Plaintiff's December 2022 accommodations request and her meeting in late February 2023 regarding that request constitute ADA protected activity.

Second, a plaintiff experiences "adverse action" for purposes of an ADA retaliation claim when her employer takes detrimental action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Termination is paradigmatic adverse action.  *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006); *Mason v. Wyeth, Inc.*, 183 Fed. App'x 353, 363 (4th Cir. 2006); *Haulbrook*, 252 F.3d at 706.  Thus, Plaintiff experienced adverse action when she was terminated on March 7, 2024.  Compl. ¶ III.B; EEOC Charge 1.

The proximity between Plaintiff's protected activity (her "late February" meeting) and the adverse action (her March 7 termination) is at a minimum one week, and at most three[5]—well within the closeness required to plausibly establish causation.  *See Jacobs*, 780 F.3d at 579.  Such close temporal proximity gives rise to a reasonable inference that Plaintiff's termination was driven by retaliatory animus.  *Id.* at 575.  As a result, Plaintiff has sufficiently alleged an ADA retaliation claim.  Dismissal is therefore inappropriate, and Defendant's motion will be denied as to Plaintiff's retaliation claim.

## B.  Title VII Claim

Plaintiff's final claim rises under Title VII.  Unlike her other claims, however, Plaintiff did not raise this claim before the EEOC.  *See* EEOC Charge 2.  As is the case under the ADA, Title VII plaintiffs must "first file a charge of discrimination with the EEOC and exhaust [their] administrative remedies before pursuing . . . claims in federal court."  *Zettervall*, 2023 WL 3568089 at *2 (E.D. Va. May 5, 2023) (citing *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849–52 (2019); *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014).  Because this Court's inquiry must be limited to the allegations contained in Plaintiff's EEOC charge, we cannot reach this claim.  *Hentosh*, 767 F.3d at 416; *Smith v. First Union Nat'l Bank*, 202 F.3d  234, 247 (4th

---

[5] The Court recognizes that there is some ambiguity as to the exact date of Plaintiff's meeting with her accommodations case manager and Ms. Worley.  *Compare* EEOC Charge 1 (describing the meeting as occurring "the last week of February 2023"); *with* Compl. ¶ III.B (describing discriminatory acts as occurring on "February 15th or 16th").

Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.").  Defendant's motion will therefore be granted as to Plaintiff's Title VII claim.

## V.   CONCLUSION

For the reasons set forth above, the Court will grant Defendant's Motion to Dismiss (ECF No. 8) only as to Plaintiff's ADA failure to accommodate and wrongful termination claims, as well as her Title VII claim.  Plaintiff's retaliation claim, however, remains.

An appropriate Order shall issue.

/s/ _RCY_

Roderick C. Young
United States District Judge

Richmond, Virginia
Date:  September 23, 2024